**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MARTIN J. TURPEL**<br>Individually and as Administrator of the<br>Estate of V.T., a minor, deceased,<br>8315 Infirmary Road<br>Ravenna, OH 44266<br><br>and<br><br>**JANNA TURPEL**<br>8315 Infirmary Road<br>Ravenna, OH 44266<br><br>      Plaintiffs,<br><br>v.<br><br>**TRUCKCORP, LLC**<br>**d/b/a ARM TRUCK CORP.**<br>C/O Nicholas W. Ballas, Statutory Agent<br>2645 Carrington Street NW<br>North Canton, OH 44720<br><br>and<br><br>**CHATHAM TOWNSHIP**<br>6306 Avon Lake Road<br>Spencer, OH 44275<br><br>and<br><br>**MEDINA COUNTY**<br>144 N. Broadway<br>Medina, OH 44256<br><br>and<br><br>**CITY OF MEDINA**<br>132 N. Elmwood Avenue<br>Medina, OH 44256<br><br>and | Case No.:<br><br>Judge:<br><br>**COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON**<br><br>**Jonathan N. Bond (0096696)**<br>**Michael Jay Leizerman (0063945)**<br>*The Law Firm for Truck Safety, LLP*<br>3232 Executive Parkway, Suite 106<br>Toledo, OH 43606<br>Phone: (800) 628-4500<br>Fax: (888) 838-8828<br>jon@truckaccidents.com<br>michael@truckaccidents.com<br><br>**John C. Camillus (0077435)**<br>*Law Offices of John C. Camillus, LLC*<br>P.O. Box 141410<br>Columbus, OH 43215<br>Phone: (614) 992-1000<br>jcamillus@camilluslaw.com<br><br>*Attorneys for Plaintiffs* |

**JOSEPH MICHAEL AUNGST**
individually and in his official capacity,
6098 Richman Road
Spencer, OH 44275

and

**DOUGLAS CLINAGE**
individually and in his official capacity,
C/O Medina County Sheriff's Office
555 Independence Drive
Medina, OH 44256

and

**MATTHEW DENTON**
individually and in his official capacity,
C/O Medina County Sheriff's Office
555 Independence Drive
Medina, OH 44256

and

**SAMANTHA TURNER**
individually and in her official capacity,
C/O Medina County Sheriff's Office
555 Independence Drive
Medina, OH 44256

and

**J. MATTHEW LANIER**
individually and in his official capacity,
132 N. Elmwood Avenue
Medina, OH 44256

       Defendants.

## OVERVIEW

1.     This is a wrongful death, survivorship, products liability, and civil rights action, arising from the fatal crash that caused the suffering and tragic death of thirteen-year-old V.T. and the State's subsequent unconstitutional treatment of V.T.'s mother, Janna, in the crash aftermath.

2

2. On June 14, 2024, on a clear afternoon, a 2020 Western Star 4700 dump truck, owned by Chatham Township and operated by Defendant Joseph Michael Aungst—Chatham Township's own Road Supervisor, and the son of a sitting Chatham Township Trustee and Medina County Fair Director, was traveling southbound on State Route 83.

3. Although it was summer, the dump truck that Aungst operated still had its snowplow hitch fastened to the front of the truck with the plow lift arm (also known as the "lift boom") fully extended several feet off the front of the truck, with no snowplow blade attached.



4. Because it was summer, there was no conceivable or reasonable reason for the lift boom to be in this position. The snowplow should not have been fastened to the front of the dump truck at all. At the very least, the lift boom should not have been extended while the vehicle was being operated and needed to be lowered and stowed.

5. The plow hitch and lift arm on the Chatham dump truck was made and manufactured by TruckCorp, LLC d/b/a ARM Truck Corp. The ARM plow hitch allowed for the lift boom to be easily removed or folded and stowed for non-snowplow operational purposes.

6. The dangers of operating a truck that is not snowplowing with a plow lift boom extended have been known for decades. With the lift boom extended in the summer, the dump truck was harder to maneuver and a battering ram just waiting to inflict catastrophic damage. The industry standard requires warnings in the plow operator's manual and on the plow itself about the dangers of operating with the lift boom extended.

7. Yet, the manufacturer of the plow assembly, Defendant TruckCorp LLC d/b/a ARM Truck Corp, failed to provide adequate warnings of the lethal hazard created by operating the vehicle with the lift arm extended when no plow blade is attached—a danger that courts and legislatures have recognized for decades.

8. Despite the known and obvious dangers and the ease of removing, folding, and latching the hitch, Aungst, the person whose job it was to keep Chatham Township's road equipment safe, chose to drive a lethal battering ram through the township's public roads.

9. On June 14, when Janna Turpel's vehicle entered the intersection of State Routes 83 and 162, Aungst and the Chatham dump truck struck the vehicle, and the unsecured plow lift arm pierced the passenger compartment, impaling and ultimately killing V.T., who was seated in the front passenger seat.

10. Joseph Aungst told police that he could not avoid the collision because of the extended lift boom, which pierced the car's passenger door. The plow hitch, he said, "deterred" him from avoiding the crash. Also, Aungst had roughly four full seconds to observe Turpel's vehicle in the intersection and yet he did not brake or release the throttle prior to impact. Upon information and belief, Aungst did not have the required CDL to operate the dump truck. Nothing in the police report or from the police investigation indicates that Aungst possessed a CDL at the time of the crash.

4

11.     This action further arises from a coordinated pattern of unconstitutional conduct by Medina County and its Sheriffs, Medina City, and Municipal Prosecutor J. Matthew Lanier in the aftermath of the crash.

12.     Defendant Douglas Clinage, the primary investigating officer, conducted an intentionally one-sided investigation: he failed to take signed witness statements at the scene, declined statements from an independent witness, turned off or failed to turn on his body camera at critical moments, omitted from his report Aungst's own admission that the plow hitch prevented him from avoiding the collision, did not even determine whether Aungst had the proper licensing, and submitted a report concluding Janna Turpel was the sole party at fault. Deputy Denton and Sergeant Turner engaged in similar conduct, reassuring Aungst and his co-driver that they bore no fault, and intentionally conducting critical portions of their investigation off speaker phone or off body camera.

13.     Acting on the Sheriff's one-sided referral, Defendant Lanier—a Medina Municipal Court Prosecutor operating within the Medina County legal ecosystem and acting to protect that ecosystem—targeted Janna Turpel with extraordinary criminal charges grossly disproportionate to her potential misconduct, and then conditioned criminal plea leniency for Janna—the mother of the child who died—on her oral representation that she would not file a civil lawsuit related to the crash. Lanier and the County and other townships used the criminal charges as private civil-litigation leverage. Lanier and the County and other townships then required and extended Janna's criminal diversion period far beyond any precedent for the purpose of maintaining control and running down the civil statute of limitations.

5

14. V.T.'s father, Martin J. Turpel, brings this action individually and as the duly appointed Administrator of the Estate of V.T. Janna Turpel brings this action individually to seek redress for the violation of her Constitutional rights.

**PARTIES**

15. Plaintiff Martin J. Turpel is a resident of Portage County, Ohio and the father of V.T., deceased. The Estate of V.T. was opened in Portage County, and Martin Turpel was appointed Administrator by the Portage County Probate Court on or about March 28, 2025. Letters of Authority are attached hereto as Exhibit A. V.T. is also survived by her mother Janna Turpel and several siblings.

16. Plaintiff Janna Turpel is a resident of Portage County, Ohio and brings this action in her personal capacity to seek redress for the violation of her Constitutional rights.

17. Defendant Chatham Township is a township organized under the laws of the State of Ohio, located in Medina County, with its principal offices at 6306 Avon Lake Road, Spencer, OH 44275. At all relevant times, Chatham Township owned the 2020 Western Star 4700 dump truck involved in this crash, employed Defendant Aungst as its Road Supervisor, and bore responsibility for the maintenance, safe equipping, and operation of that vehicle and all Township road equipment. Chatham Township is a "political subdivision" within the meaning of R.C. 2744.01(F). Its statutory immunity is abrogated under R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle by its employees acting within the scope of their employment. Chatham Township may be served through its Board of Trustees.

18. Defendant Medina County is a county organized under the laws of the State of Ohio, with its principal offices at 144 N. Broadway, Medina, OH 44256. Medina County employs the officers of the Medina County Sheriff's Office, including Defendants Clinage, Denton, and

Turner, who conducted the investigation of the June 14, 2024, crash. Medina County is responsible for the policies, customs, actions, and practices of its Sheriff's Office and its municipal prosecutors and is liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for constitutional violations committed pursuant to county policy, practice, or custom.

19. The City of Medina is a City organized under the laws of the State of Ohio, located in Medina County, with its principal offices at 132 N. Elmwood Ave, Medina, OH 44256. The City of Medina employs Lanier. The City of Medina is responsible for the policies, customs, actions, and practices of its municipal prosecutors and is liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for constitutional violations committed pursuant to city policy, practice, or custom.

20. Defendant Joseph Michael Aungst is a resident of Medina County, Ohio, residing at 6098 Richman Road, Spencer, OH 44275. At all relevant times, Defendant Aungst drove the truck involved in the crash and served as the Road Supervisor for Chatham Township—the Township official directly responsible for the maintenance, inspection, preparation, and safe operation of Chatham Township's road vehicles and equipment, including the 2020 Western Star 4700 dump truck. In his capacity as Road Supervisor, Defendant Aungst had both the authority and the specific professional duty to ensure that the plow lift arm was stowed before the vehicle was operated on public roads during the non-plowing season. Upon information and belief, Defendant Aungst is the son of a sitting Chatham Township Trustee and Medina County public official, a fact relevant to the political context of the retaliatory prosecution described herein. Defendant Aungst is sued individually and in his official capacity as Chatham Township Road Supervisor.

21. Defendant J. Matthew Lanier is an individual who, at all relevant times, served as the City of Medina Assistant Law Director and Municipal Prosecutor for parts of Medina County, including Chatham and the City of Medina. Lanier received the referral from the Medina County Sheriff's Office, authorized and prosecuted criminal charges against Janna Turpel, and engaged in the unconstitutional conduct described herein. Defendant Lanier is sued in both his individual and official capacities.

22. Defendant Deputy Douglas Clinage is a deputy with the Medina County Sheriff's Office. At all relevant times, Clinage served as the primary investigating officer for the June 14, 2024, crash. He authored the Ohio Traffic Crash Report and multiple supplemental narratives related to the crash and referral for prosecution. He is sued individually and in his official capacity.

23. Defendant Deputy Matthew Denton is a deputy with the Medina County Sheriff's Office. At all relevant times, Denton participated in the investigation of the June 14, 2024, crash, conducted witness interviews, and authored supplemental narratives. He is sued individually and in his official capacity.

24. Defendant Sergeant Samantha Turner is a sergeant with the Medina County Sheriff's Office. At all relevant times, Turner supervised and participated in the investigation of the June 14, 2024, crash, directed further investigation, and participated in the referral for criminal prosecution. She is sued individually and in her official capacity.

25. Defendant TruckCorp LLC d/b/a ARM Truck Corp ("ARM Truck Corp") is a limited liability company and a member of the Groupe Fabkor corporate family, with its principal place of business in Canton, Ohio (Stark County).  ARM Truck Corp designed, manufactured, and distributed the front snowplow hitch assembly—including the lift arm and hydraulic cylinder—installed on the Chatham Township dump truck involved in this crash.  ARM Truck Corp resides

and regularly conducts business in the State of Ohio and is subject to personal jurisdiction in this Court.

**JURISDICTION AND VENUE**

26.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises, in part, under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III.

27.     Venue is proper in the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).  Multiple Defendants reside and operate in Medina County, Ohio, within the Eastern Division of this District. A substantial part of the events and omissions giving rise to the claims—including the crash on June 14, 2024, and the subsequent police and prosecutorial misconduct occurred in Medina County, Ohio, within the Eastern Division of this District.

**FACTUAL ALLEGATIONS**

**A.  The June 14, 2024, Crash**

28.     On June 14, 2024, on a bright and sunny afternoon, the Turpel family was traveling westbound through Chatham Township, Medina County, Ohio, headed to Findlay State Park for a holiday weekend camping trip.  Martin Turpel led the way in one vehicle.  His wife, Janna Turpel, and their thirteen-year-old daughter, V.T., followed in a 2017 Dodge Grand Caravan, with Janna driving and V.T. seated in the front passenger seat.

9

29.     At the same time, Defendant Joseph Michael Aungst—Chatham Township's Road Supervisor and driver—and his passenger, Tate Arters, were operating a Chatham Township 2020 Western Star 4700 dump truck southbound on State Route 83. Aungst and Arters were on their way to the next job site in the course of Township road work.

30.     Although the winter snow-plowing season had long ago ended, the Chatham Township dump truck still had the front snowplow hitching mechanism—also called a plow mount or lift boom—fastened to the front of the vehicle.  The front snowplow lift arm was fully extended outward from the front of the truck.  No snowplow was attached.  The lift arm had not been folded and stowed as required by the manufacturer's guidelines and by generally accepted standards governing the safe operation of municipal vehicles during non-plowing seasons. As the Township's Road Supervisor and driver of the truck, Defendant Aungst was the person specifically responsible for ensuring that township vehicles and this vehicle were in a safe operating condition before being driven on public roads.

31.     The intersection of State Route 162 and State Route 83 is a heavily traveled but confusing intersection in Medina County controlled by a two-way stop. At the time of the crash, stop signs governed only eastbound and westbound traffic on State Route 162, whereas State Route 83 was uncontrolled at this intersection. Upon information and belief, this intersection was known to be confusing to motorists, and following the crash, Chatham Township requested an Ohio Department of Transportation investigation of the intersection, which ultimately resulted in increased traffic devices. Janna Turpel stopped at the stop sign on State Route 162, checked for traffic, and then proceeded westbound into the intersection.

32.     Defendant Aungst, traveling southbound on State Route 83 entered the intersection and struck the passenger side of the Turpel vehicle.

33.     The extended plow lift arm pierced the passenger side of the Turpel vehicle and became lodged inside the passenger compartment, directly striking and impaling V.T.  Defendant Aungst told responding law enforcement that the plow mount caused him to lose control and deterred him from avoiding the collision. Officers further noted that, in attempting to steer left to avoid the collision, the dump truck's front attachment bar collided into the right side of the Turpel vehicle, the impact forced the front of the dump truck westward, Aungst lost control, and the truck pushed the Turpel vehicle into a large boulder at the southwest corner of the intersection known as the Chatham Rock.

34.     After impact, Defendant Aungst turned off the dump truck and engaged the parking brake, leaving the plow mount lodged inside the Turpel vehicle and inside V.T. Fire department personnel, paramedics, and a tow company were required to work together to dislodge the dump truck from the Turpel vehicle to free V.T. Martin and Janna Turpel watched helplessly as first responders worked to save their daughter. Witnesses at the scene reported hearing Janna screaming, "my baby."

35.     V.T. suffered greatly and was transported to Lodi Community Hospital, where she was pronounced dead at 4:58 p.m. The Medina County Coroner determined that the primary cause of death was blunt force trauma to the chest and lower extremities, caused by the penetration of the plow lift arm into the passenger compartment.

**B.  The Unconstitutional Conduct of the Medina County Sheriffs.**

36.     The crash was investigated by the Medina County Sheriff's Office. The primary investigating officer was Defendant Deputy Douglas Clinage. Deputy Matthew Denton and Sergeant Samantha Turner also participated in the investigation. From the outset, the investigation

was one-sided, incomplete, and conducted in a manner that intentionally protected the County, Aungst, and Chatham Township at the expense of an accurate and honest account of what occurred.

37. **Deputy Clinage's Defective Investigation.** Deputy Clinage was the first officer at the scene and authored both the Ohio Traffic Crash Report and multiple supplemental narratives. His investigation was demonstrably deficient in the following respects.

38. Upon information and belief, Clinage did not take any signed witness statements at the scene of the crash.

39. In the body camera footage, Clinage approached Tate Arters—Aungst's co-driver and a passenger in the Township truck—and asked whether Arters was "allowed to be in the truck." When Arters confirmed that he was, Clinage stated something along the lines of: "Well then, we don't have to be so secretive. Not that I would anyway." This statement, captured on body camera, reflects an inappropriate alignment with the Township's personnel from the earliest moments of the investigation.

40. At another point on body camera footage, Clinage turned down a statement from an independent witness to the crash because he had already heard from the guys in the truck. The intentional decision to decline independent witness accounts while crediting the accounts of the Township's own employees reflects investigative bias.

41. Clinage's police report narrative omits any mention of Aungst's admission that the plow hitch deterred him from properly reacting to and avoiding the collision, despite that admission being directly relevant to fault and causation.

42. Clinage's initial narrative in the police report was facially cursory: "On 6/14/24 I responded to an injury crash at the intersection of SR 83 and SR 162. EMS arrived and treated

12

patients on scene and transported a juvenile to the hospital. An investigation was initiated. Photos and drone mapping footage were taken. A report was made."

43. Clinage's report contains no information about whether Aungst even possessed the appropriate commercial driver's license required to operate the 26,000+ pound dump truck.

44. Clinage's supplemental report dated 6/16/24 references statements from witnesses Beverly Scandlon and Jane Wright, but those statements are not captured on body camera footage and are not substantively articulated in his supplemental narrative.

45. Clinage's supplemental narrative also references a 6/24/24 meeting with Tate Arters and Joseph Aungst to obtain their written statements. That interaction is not captured on any body camera footage.

46. In the police report, the only accounts stating that the Turpel van abruptly pulled in front of the truck without adequate time for Aungst to react were those of Aungst and Arters—the Township's own driver and co-driver. No independent witness statement supports that account. Turpel's accident reconstruction from the criminal case later confirmed that Aungst did not release the throttle or apply the brakes at any point prior to impact, despite having the Turpel vehicle visible in front of him for approximately four seconds before impact.

47. **Deputy Denton's Conduct.** On June 16, 2024—two days after the crash—Deputy Denton called Aungst and Arters by telephone to obtain their descriptions of the crash. The calls were conducted over speaker phone to allow the interviews to be captured by body camera audio, and Deputy Denton had his body camera activated to record the calls.

48. During his call with Aungst, when Aungst began to describe how the plow hitch "deterred" him from being able to avoid the crash, Deputy Denton took his phone off speaker so that his body camera would not be able to capture what Aungst was saying. The two then spoke

13

for several minutes off speaker, during which time the plow hitch and its role in the crash were discussed further. That portion of the conversation does not appear in Denton's body camera footage and does not appear in his supplemental narrative.

49. Denton told Aungst during the call that he was not investigating him, that this was a tragic accident, and that he did not think it was Aungst's fault whatsoever. This statement, made in the middle of an active investigation, was premature, improper, and reflected an investigative posture that treated the Township's driver as absolved before the investigation was complete.

50. Denton conducted substantially the same call with Tate Arters, again taking the call off speaker at a critical point to avoid having the statements of Arters captured by his body camera, and telling Arters that he believed this was a tragic accident and that Aungst had no fault.

51. Denton's supplemental narrative references a detailed statement from Janna Turpel obtained on 6/19/24, but that interview does not appear on body camera footage.

52. **Sergeant Turner's Conduct.** Sergeant Turner was present at the scene of the crash on June 14, 2024, and directed further investigation in the days that followed.

53. Turner was present at the crash scene but captured only approximately twenty minutes of body camera footage, the majority of which she obscured by placing a vest in front of the camera lens.

54. Two days after the crash, Turner directed Clinage to provide a supplemental narrative documenting further investigation. Upon information and belief, this direction was part of a coordinated effort to build a record supporting criminal charges against Janna Turpel while the investigation of Aungst and the Township remained limited.

14

55. The police report indicates that on June 16, Turner called witnesses to obtain written statements and called on-scene personnel to obtain their account of their involvement. No record of those witness conversations appears in body camera footage or supplemental narratives.

56. The effect of Clinage's, Denton's, and Turner's investigative conduct, individually and cumulatively, was to produce a police report that: (a) accepted without scrutiny the accounts of the Township's own driver and co-driver; (b) concealed Aungst's admission that the plow hitch prevented him from avoiding the collision and further evidence about the impact of the plow hitch; (c) accepted Aungst's unverified claim that Janna failed to stop; (d) declined or failed to adequately capture independent witness statements; and (e) concluded that Janna Turpel was the sole party at fault, without ever meaningfully investigating the role of the extended plow hitch in causing the crash and the death of V.T. That faulty report became the factual predicate for the criminal charges against Janna Turpel described below.

## C. Defendant Aungst's Dual Role: Driver and Road Supervisor

57. At the time of the crash, Defendant Aungst was not merely a township driver—he was Chatham Township's Road Supervisor. In that role, he bore direct institutional responsibility for the maintenance, preparation, and safe operation of all Chatham Township road vehicles and equipment. He was the person charged with ensuring that the Township's dump trucks were road-ready and safely equipped before they were operated on public highways.

58. The failure to stow the plow lift arm before operating the dump truck was not a mere oversight by an uninformed employee. It was a failure by the Township official whose specific job function included knowing—and enforcing—the requirement that plow assemblies be stowed during non-plowing operations. Chatham Township had placed its road safety program in

15

the hands of a person who then drove one of its vehicles in a manifestly unsafe configuration, killing a child.

59. The Township's failure to maintain and enforce any policy requiring the stowing of plow assemblies during the non-plowing season, and its entrustment of vehicle safety oversight and driving of a 26,000+ pound vehicle to an individual who may not even have possessed a required CDL, reflect a systemic failure of governance that goes beyond individual negligence.

**D. The Plow Lift Arm: A Known and Documented Hazard**

60. The front snowplow hitch assembly installed on the Chatham Township dump truck was designed, manufactured, and distributed by Defendant TruckCorp LLC d/b/a ARM Truck Corp. The system includes a front snowplow lift arm, a hydraulic cylinder, and a hitch-style quick-release pin with an R-clip retainer specifically designed to allow the lift arm to be quickly disconnected and folded to a stowed vertical position when the snowplow is not in use.

61. ARM Truck Corp's product documentation, applicable industry safety standards, and the generally accepted practices of municipal fleet operators all require that, when a vehicle is not actively engaged in snowplowing, the front snowplow lift arm be folded down and stowed. This is a routine task requiring only the removal of the hitch-style pin. Defendant Aungst, as Road Supervisor, knew or should have known this requirement. Neither he nor Chatham Township complied.

62. The danger posed by operating a vehicle with an extended plow lift arm and no blade attached has been recognized for decades.

63. In 2022, the Commonwealth of Massachusetts enacted a statute requiring removal of plow hitching mechanisms between May 15 and October 15 following documented crashes caused by unsecured plow assemblies during warm weather months.

16

64.     The common-law duty of care required Chatham Township and Defendant Aungst—particularly in his capacity as Road Supervisor—to stow or remove the lift arm before operating the vehicle on public roads.

65.     The common law duty of care required Chatham Township and Defendant Aungst to not drive trucks with the lift boom extended during periods where no plowing is being done.

66.     The common law duty of care required Chatham Township and Defendant Aungst to not allow the driving of its dump trucks with a weight of over 26,000 pounds without the required CDL.

67.     Simultaneously, Defendant ARM Truck Corp failed to provide adequate warnings on or with the plow hitch assembly communicating: (a) that the lift arm must be folded and stowed whenever the plow blade is not attached and the truck is not engaged in active plowing operations; (b) that operating on public roads with the lift arm extended and no blade attached creates a foreseeable and documented risk of penetrating, fatal injury to occupants of other vehicles; and (c) that the quick-release hitch-style pin exists specifically to facilitate rapid stowing of the lift arm during non-plowing operations. There was no warning sticker whatsoever on the lift arm.  This failure to warn was a direct and proximate cause of V.T.'s death.

68.     The extended hydraulic lift cylinder—with a contact surface area of approximately 35 square inches—delivered an estimated 41,632 to 51,515 foot-pounds of force per square inch to the passenger compartment of the Turpel vehicle, representing a more than 3,200 percent increase in contact pressure over what the truck's bumper alone would have delivered.  The presence of the extended lift arm increased the risk of fatal injuries to V.T. by more than 300 percent compared to a standard side-impact collision without compartment intrusion. V.T. died because of the extended lift boom.

17

**E. The Violation of Janna Turpel's Civil Rights**

69. Despite Defendant Aungst's own admission that the plow mount caused him to lose control and prevented him from avoiding the collision, the Medina County Sheriff's Office identified Janna Turpel as the only "Unit in Error" and initiated severe charges against her. Thereafter, the Medina Municipal Prosecutor authorized charges of Aggravated Vehicular Homicide and Vehicular Manslaughter against Janna Turpel. Janna Turpel was intentionally overcharged by Defendants Lanier and Medina County and City in order to generate leverage for, and protect against, a meritorious civil wrongful-death claim.

70. The criminal charges were brought in the absence of any traditional basis for charges of their magnitude. Janna Turpel was not high or drunk. She was not distracted or texting. At worst, she confused a two-way stop for a four-way stop at a known confusing intersection. The plow hitch killed her daughter. Yet, Janna Turpel—a grieving mother who just had watched her daughter die in front of her in the most horrific way imaginable—was arrested and charged with killing her own child shortly after the crash.

71. Plaintiffs' prior counsel, Attorney John Cameron (now deceased), had announced his involvement in the anticipated civil litigation against Chatham Township. Upon information and belief, the decision to pursue criminal charges against Janna Turpel was influenced, at least in part, by an intent to retaliate against Turpel based on Cameron's involvement, protect against anticipated civil litigation, and to deter the filing of a civil lawsuit against the Township whose Road Supervisor—the son of a sitting Chatham Trustee and Medina County public official—had operated the death machine that killed V.T.

72. At all relevant times, Defendant J. Matthew Lanier served as a Medina Municipal Court Prosecutor and simultaneously as the Assistant Law Director for the City of Medina where

18

he provided civil defense services for Medina City. During plea negotiations, Defendant Lanier expressly conditioned the plea offer on a representation that Janna Turpel would not pursue a civil lawsuit against Chatham Township. When Turpel's criminal defense counsel, Attorney Donald Malarcik, pushed for a no contest plea, Lanier called Malarcik and expressly told him that he needed Janna Turpel to plead guilty because he did not want her to file a "BS" and "frivolous" lawsuit related to the crash. When Malarcik refused to agree to that condition, Lanier stated words to the effect of: "If you think you're going to bring some frivolous BS lawsuit, we're going to trial and we'll convict her."

73.     A no-contest plea was ultimately entered.  As a condition of the plea, and under duress, Attorney Malarcik represented to Defendant Lanier that Janna Turpel had no present intention to file a civil lawsuit—a representation made solely to protect his client from trial, not as a genuine waiver of her constitutional rights.

74.     Following the plea, Defendant Lanier and his team set the diversion term at twelve months—double the standard six-month period. The diversion counselor later confirmed to Janna that Medina County had it out for her.  She also confirmed to Attorney Malarcik that the twelve-month term was unprecedented and unnecessary, and that Janna Turpel had successfully completed the program. When Attorney Malarcik moved to terminate the diversion early, Defendant Lanier's office filed a pleading opposing the motion and threatening resentencing. The presiding judge denied early termination. The twelve-month diversion period coincided with the approaching expiration of Janna Turpel's two-year civil statute of limitations. The inference that Defendant Lanier deliberately extended the diversion to prevent the filing of a timely civil action is compelling and is supported by the totality of his conduct.

19

75.     The acts of Defendant Lanier described above were taken under color of state law, pursuant to his authority as a municipal prosecutor, and were motivated by his dual role as a civil attorney for an adjacent city sitting within the same County. These acts constitute retaliatory, unconstitutional conduct depriving Janna Turpel of various constitutional rights, in violation of 42 U.S.C. § 1983.

**FIRST CAUSE OF ACTION**
*Wrongful Death against Chatham Township*

76.     All previous allegations are incorporated herein by reference.

77.     Chatham Township is a "political subdivision" as defined by R.C. 2744.01(F). Under R.C. 2744.02(A)(1), political subdivisions are generally immune from tort liability except as provided in R.C. 2744.02(B). Pursuant to R.C. 2744.02(B)(1), that immunity does not apply when injury, death, or loss is caused by the negligent operation of any motor vehicle by a township employee acting within the scope of his employment and authority. At all relevant times, Defendant Aungst was operating the Township dump truck within the scope of his employment as Road Supervisor. The Township's statutory immunity is therefore abrogated.

78.     Defendant Joseph Aungst operated the dump truck negligently during the course and scope of his employment with the Township.

79.     Defendant Joseph Aungst had a duty to: (a) operate the Township dump truck in a reasonably safe manner; (b) inspect and prepare the vehicle and its equipment before operation on public roads, including ensuring that the plow lift arm was stowed and not drive dump trucks that were not in a reasonably safe condition to drive; (c) enforce and comply with applicable standards governing the safe operation of municipal road vehicles and equipment; (d) failed to possess the required CDL to drive the vehicle; and (e) failed to maintain proper control of the vehicle and a proper lookout.

20

80.     Defendant Aungst knew, or in the exercise of even minimal professional competence should have known, that the plow lift arm was extended from the front of the dump truck in an unsecured position with no plow blade attached, creating a foreseeable risk of penetrating, fatal injury to occupants of other vehicles in the event of a collision. This configuration was the opposite of safe vehicle preparation—it was precisely the hazard his job required him to prevent.

81.     Defendant Aungst breached his duties by: (a) operating the Township dump truck on a public roadway with the snowplow lift arm fully extended, unsecured, and without a plow blade attached during the non-plowing season; (b) failing to inspect the vehicle and stow the lift arm before placing the truck in service on public roads; (c) failing to maintain a proper lookout and take timely evasive action to avoid or mitigate the collision; (d) driving the vehicle without the proper license; and (d) otherwise failing to exercise the degree of care required of a reasonably prudent Road Supervisor and vehicle operator under the circumstances.

82.     Chatham Township independently owed duties to the public and V.T.  Those duties include the duties to: (a) maintain motor vehicles and equipment in a reasonably safe condition for operation on public roadways; (b) establish, implement, or enforce any policy requiring the stowing or removal of snowplow hitch assemblies during the non-plowing season—despite the fact that this hazard has been documented in litigation and legislative findings for decades; (c) train, supervise, and instruct its Road Supervisor and other drivers on the requirement to stow the plow lift arm before operating township vehicles on public roads; and (d) reasonably entrust its road vehicles to a reasonably safe and qualified driver.

83.     Chatham Township independently breached duties to the public in connection with Aungst's negligent operation of the dump truck by: (a) failing to maintain its motor vehicles and

21

equipment in a reasonably safe condition for operation on public roadways; (b) failing to establish, implement, or enforce any policy requiring the stowing or removal of snowplow hitch assemblies during the non-plowing season—despite the fact that this hazard has been documented in litigation and legislative findings for decades; (c) failing to train, supervise, and instruct its Road Supervisor and other drivers on the requirement to stow the plow lift arm before operating township vehicles on public roads; and (d) negligently entrusting its road vehicles to a Road Supervisor who was permitted to operate unsafe equipment without proper licensing, oversight, or consequence.

84.     Chatham Township's conduct constitutes recklessness within the meaning of R.C. 2744.03(A)(5). The Township's complete failure to address the known and documented hazard of an extended plow lift arm—placing its Road Supervisor in charge of vehicle safety while he drove a massive vehicle configured as a lethal weapon through public intersections—demonstrates a conscious disregard for the rights and safety of the public.

85.     As a direct and proximate result of Defendant Aungst and Chatham Township's negligence and recklessness, V.T. sustained fatal injuries, and her next of kin and statutory beneficiaries have suffered and will continue to suffer loss of support, loss of services, and loss of society, including loss of companionship, consortium, care, love, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, along with mental anguish, grief, and emotional trauma.

**SECOND CAUSE OF ACTION**
*Wrongful Death - Recklessness of Joseph Aungst*

86.     All preceding allegations are incorporated herein by reference.

87.     Defendant Joseph Aungst had a duty to: (a) operate the Township dump truck in a reasonably safe manner; (b) inspect and prepare the vehicle and its equipment before operation on public roads, including ensuring that the plow lift arm was stowed and not drive dump trucks that

22

were not in a reasonably safe condition to drive; (c) enforce and comply with applicable standards governing the safe operation of municipal road vehicles and equipment; (d) maintain proper control of the vehicle and a proper lookout, (e) only drive vehicles he is properly licensed to driver, and (f) exercise the heightened degree of care commensurate with his authority and responsibility as the Township official responsible for road equipment safety.

88. Defendant Aungst knew, or in the exercise of even minimal professional competence should have known, that the plow lift arm was extended from the front of the dump truck in an unsecured position with no plow blade attached, creating a foreseeable risk of penetrating, fatal injury to occupants of other vehicles in the event of a collision. This configuration was the opposite of safe vehicle preparation—it was precisely the hazard his job required him to prevent.

89. Defendant Aungst breached his duties by: (a) operating the Township dump truck on a public roadway with the snowplow lift arm fully extended, unsecured, and without a plow blade attached during the non-plowing season; (b) failing to inspect the vehicle and stow the lift arm before placing the truck in service on public roads; (c) failing to maintain a proper lookout and take timely evasive action to avoid or mitigate the collision; (d) driving the dump truck without the proper license; and (e) otherwise failing to exercise the degree of care required of a reasonably prudent Road Supervisor and vehicle operator under the circumstances.

90. Defendant Aungst's conduct constitutes recklessness within the meaning of R.C. 2744.03(A)(6). Operating a massive vehicle on a public road without a CDL and with a steel lift arm extended like a lance off the front—in June, months after the plowing season, in the specific professional capacity of Township Road Supervisor—demonstrates a conscious and complete

23

disregard for the rights and safety of the traveling public. Thus, Aungst's immunity is abrogated under R.C. 2744.03(A)(6).

91.    As a direct and proximate result of Defendant Aungst's negligence and recklessness, V.T. sustained fatal injuries, and her next of kin and statutory beneficiaries have suffered and will continue to suffer loss of support, loss of services, and loss of society, including loss of companionship, consortium, care, love, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, along with mental anguish, grief, and emotional trauma.

### THIRD CAUSE OF ACTION
*Wrongful Death - Strict Products Liability — Failure to Warn (TruckCorp LLC d/b/a ARM Truck Corp)*

92.    All preceding allegations are incorporated herein by reference.

93.    Defendant ARM Truck Corp designed, manufactured, marketed, and distributed the snowplow hitch assembly installed on the Chatham Township dump truck, including the front snowplow lift arm, hydraulic cylinder, hitch-style quick-release pin, and R-clip retainer.

94.    The snowplow hitch assembly, as designed and sold, was defective and unreasonably dangerous in that it lacked adequate warnings communicating: (a) that the lift arm must be folded and stowed whenever the plow blade is not attached and the truck is not engaged in active plowing; (b) that operating on public roads with the lift arm extended and no blade attached creates a foreseeable and documented risk of penetrating, fatal injury to occupants of other vehicles; and (c) that the hitch-style quick-release pin and R-clip are specifically designed to facilitate rapid stowing of the lift arm during non-plowing operations.

95.    Contrary to longstanding industry standard, there was no sticker warning on the plow hitch arm itself communicating: (a) that the lift arm must be folded and stowed whenever the plow blade is not attached and the truck is not engaged in active plowing; (b) that operating on

24

public roads with the lift arm extended and no blade attached creates a foreseeable and documented risk of penetrating, fatal injury to occupants of other vehicles; and (c) that the hitch-style quick-release pin and R-clip are specifically designed to facilitate rapid stowing of the lift arm during non-plowing operations.

96. The dangers associated with operating a vehicle with an extended, unsecured plow lift arm were foreseeable, known, and/or knowable to ARM Truck Corp at the time of manufacture and sale. As early as 1989, a Maryland jury found a plow manufacturer liable for failing to design a product that could be safely removed when not in use. The Massachusetts legislature reached the same conclusion decades later, finding that fatalities from this exact configuration could have been avoided by removing the plow and hitching mechanism. These dangers were not as known to ordinary users—including municipal fleet operators and road supervisors—without adequate warning from the manufacturer.

97. In failing to include the proper warnings, ARM did not exercise the attention, perception, memory, knowledge, and intelligence that a reasonable manufacturer should possess and did not exercise any superior attention, perception, memory, knowledge, or intelligence that the manufacturer in question possesses.

98. The defective warning and the unreasonably dangerous condition of the plow hitch assembly was a direct and proximate cause of V.T.'s fatal injuries. Had ARM Truck Corp provided reasonable and adequate warnings, Chatham Township and Defendant Aungst—in his capacity as Road Supervisor—would have properly folded and stowed the lift arm before operating the vehicle on public roads.

99. As a direct and proximate result of ARM's failures as described above and herein, V.T. sustained fatal injuries, and her next of kin and statutory beneficiaries have suffered and will

continue to suffer loss of support, loss of services, and loss of society, including loss of companionship, consortium, care, love, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, along with mental anguish, grief, and emotional trauma.

**FOURTH CASE OF ACTION**
*Survivorship Action Against Chatham Township, Joseph Aungst, and ARM*

100. All preceding allegations are incorporated herein by reference.

101. As a direct and proximate result of the negligence and recklessness of Chatham Township, Joseph Augnst, and ARM, V.T. experienced pre death terror, conscious pain, suffering, and anguish before her death. She was thirteen years old and brutally pinned inside the vehicle while her parents watched her die from outside.

102. As a direct and proximate result of the conduct of all these Defendants, Plaintiffs' personal property was damaged and destroyed.

103. Plaintiff Martin Turpel, as Administrator of the Estate of V.T., brings this survivorship claim pursuant to R.C. 2305.21 and demands all damages recoverable on behalf of the Estate, including compensation for V.T.'s pain, suffering, and terror prior to death, and for property damage.

104. The negligence and recklessness and strict products liability of Chatham Township, Aungst, and ARM were the direct and proximate cause of the injuries and death of V.T. and the damages described in this Complaint.

105. Defendant Aungst's actions demonstrate a conscious disregard for the rights and safety of V.T. and the rest of the motoring public, acting with reckless indifference to the consequences to others despite being aware that his conduct and its great probability of causing

26

substantial harm. Accordingly, Plaintiffs demand punitive damages against Joseph Augnst in his individual capacity.

106. Defendant Chatham's actions demonstrate a conscious disregard for the rights and safety of V.T. and the rest of the motoring public, acting with reckless indifference to the consequences to others despite being aware that his conduct and its great probability of causing substantial harm.

107. Defendant ARM's actions demonstrate a conscious disregard for the rights and safety of V.T. and the rest of the motoring public, acting with reckless indifference to the consequences to others despite being aware that his conduct and its great probability of causing substantial harm. Accordingly, Plaintiffs demand punitive damages against ARM.

**FIFTH CAUSE OF ACTION**
*Civil Rights — Brady Violations and Fabrication of Evidence (42 U.S.C. § 1983 — On Behalf of Janna Turpel — Defendants Clinage, Denton, Turner, Medina County)*

108. All preceding allegations are incorporated herein by reference.

109. At all relevant times, Defendants Clinage, Denton, and Turner acted under color of state law in their capacities as officers of the Medina County Sheriff's Office.

110. Janna Turpel had a clearly established due process right under the Fourteenth Amendment to a fair investigation and to disclosure of all material exculpatory and impeachment evidence in the possession of law enforcement.

111. Clinage, Denton, and Turner violated Janna Turpel's due process rights by: (a) suppressing and omitting from their reports Aungst's admission that the extended plow hitch prevented him from avoiding the collision—evidence directly material to Janna Turpel's guilt or innocence; (b) declining to record or report independent witness statements that may have contradicted the Township's account; (c) accepting and crediting without scrutiny the accounts of

Aungst and Arters—the Township's own driver and co-driver—while suppressing evidence inconsistent with those accounts; (d) intentionally taking investigative calls off speaker phone so that critical portions of their investigation helpful to Janna Turpel would not be captured by body camera, depriving Janna Turpel of the ability to access and use that information in her defense; (e) failing to disclose to prosecutors and to defense counsel the content of the off-camera conversations with Aungst and Arters regarding the plow hitch; and (f) submitting reports that affirmatively misrepresented the facts of the investigation by omitting material information about the plow hitch's central role in the crash. The suppression and omission of evidence regarding Aungst's admission about the plow hitch was material. Had it been disclosed, it would have undermined the factual predicate for the criminal charges, supported Janna Turpel's defense, and directly implicated the Township's vehicle in causation of the crash.

112. Medina County is liable under *Monell* for the constitutional violations of its Sheriffs because: (a) the pattern of conduct by Clinage, Denton, and Turner—including off-camera interviews, omission of exculpatory information, and premature exoneration of the Township's driver—reflects a departmental custom or practice of conducting one-sided investigations that protect local governmental entities from civil liability; and/or (b) supervisory officials, including Sergeant Turner, directed and ratified the deficient investigation; and/or (c) Medina County was deliberately indifferent to the known risk that its officers would conduct biased investigations where local governmental entities were involved.

113. As a direct and proximate result of Defendants' unconstitutional conduct, Janna Turpel was subjected to criminal prosecution based on a one-sided and materially incomplete investigation, was deprived of exculpatory evidence in her criminal defense, and suffered the resulting damages described herein.

114. Plaintiffs demand compensatory damages, punitive damages against Defendants Clinage, Denton, and Turner in their individual capacities, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

### SIXTH CAUSE OF ACTION
*Civil Rights — First Amendment Retaliation and Unconstitutional Conditions (42 U.S.C. § 1983 — On Behalf of Janna Turpel — Defendants Lanier, County of Medina, City of Medina, and Chatham Township)*

115. All preceding allegations are incorporated herein by reference.

116. At all relevant times, Defendant Lanier acted under color of state law in his capacity as a Medina City and Medina County Municipal Court Prosecutor.

117. Janna Turpel possessed a clearly established First Amendment right to petition the courts for redress—including the right to file a civil lawsuit against Chatham Township for the wrongful death of her daughter. That right is protected under the First and Fourteenth Amendments to the United States Constitution and may not be conditioned, abridged, or punished by a government official.

118. Defendant Lanier violated that right by: (a) expressly conditioning criminal plea leniency on Janna Turpel's agreement not to file a civil lawsuit with no independent legitimate reason to make this agreement and where the agreement was unrelated to Lanier's prosecutorial responsibilities, was the product of prosecutorial overreaching, and was not in the public interest; (b) threatening to proceed to trial if civil litigation was pursued, using the criminal process as a weapon to suppress the exercise of a constitutional right; (c) setting the criminal diversion period at twelve months rather than the standard six months, without legitimate penological justification, for the purpose of exhausting the civil statute of limitations; (d) filing a pleading in the criminal case opposing early termination of diversion and threatening resentencing when Janna Turpel sought to be discharged after completing the program; (e) overcharging Janna Turpel with severe

29

criminal charges in order to protect against a civil lawsuit; and (f) maintaining a simultaneous financial interest in the suppression of Janna Turpel's civil claims by virtue of his civil defense representation of another municipality within Medina County.

119. These acts constitute First Amendment retaliation, an unconstitutional condition on the exercise of a constitutional right, and a deprivation of liberty without due process of law, in violation of 42 U.S.C. § 1983.

120. Defendant Lanier is not entitled to absolute prosecutorial immunity for the conduct described herein. Lanier's decisions were deliberately based upon an unjustifiable standard, that being Janna Turpel's potential exercise of her First Amendment rights. Moreover, absolute immunity protects only conduct intimately associated with the judicial phase of the criminal process.

121. Conditioning a plea on the waiver of a civil lawsuit under these circumstances, setting a diversion period to exhaust a limitations period, filing pleadings to threaten resentencing in order to suppress civil litigation, and acting throughout to protect Chatham Township are not prosecutorial functions—they are administrative and personal acts for which only qualified immunity (at most) applies. Defendant Lanier cannot satisfy qualified immunity because the rights at issue were clearly established, and a reasonable prosecutor would have known that this conduct violates those rights.

122. As a direct and proximate result of Defendants' unconstitutional conduct, Janna Turpel has suffered the chilling and deprivation of her First Amendment rights, emotional distress, the burden of prolonged and unjustified criminal supervision, and the impairment of her ability to timely pursue civil redress for the wrongful death of her daughter.

30

123. Plaintiffs demand compensatory damages, punitive damages against Defendant Lanier in his individual capacity, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

124. Plaintiffs further seek injunctive relief in the form of an injunction prohibiting these Defendants from seeking further extension of Janna Turpel's involvement in the diversion program or seeking to revoke the plea agreement in light of the filing of this lawsuit, both of which Defendants have affirmatively threatened to do.

125. Defendant Lanier's actions in this matter have been taken, in whole or in part, in his capacity as assistant law director for the City of Medina, because the actions described herein have been taken to deter Janna Turpel's exercise of her constitutional rights. Lanier has a stake in deterring the exercise of Janna Turpel's constitutional rights.

126. Lanier acted as a final municipal policymaker. In that capacity, Lanier established a policy, in response to the circumstances of this case, of over-charging a potential civil plaintiff criminally, and utilizing those charges as leverage against that civil case, where the potential civil defendant is a local municipality. As such, the City and/or the County and/or the Township are liable for these constitutional deprivations.

### SEVENTH CAUSE OF ACTION
*Civil Rights — Vindictive Prosecution (42 U.S.C. § 1983 — On Behalf of Janna Turpel — Defendants Lanier, City of Medina, County of Medina, and Chatham Township)*

127. All preceding allegations are incorporated herein by reference.

128. At all relevant times, Defendant Lanier acted under color of state law in his capacity as a Medina Municipal Court Prosecutor.

129. Lanier and/or the City and/or the County and/or the Township acted to deter Janna Turpel from exercising her protected right to seek redress in the courts and violated her right to due process.

31

130. Lanier, by virtue of his dual role that included being assistant law director and defending against civil claims of a nearby municipality, had a stake in deterring Turpel's exercise of her constitutional rights.

131. Lanier acted unreasonably by (a) expressly conditioning criminal plea leniency on Janna Turpel's agreement not to file a civil lawsuit with no independent legitimate reason to make this agreement and where the agreement was unrelated to Lanier's prosecutorial responsibilities, was the product of prosecutorial overreaching, and was not in the public interest; (b) threatening to proceed to trial if civil litigation was pursued, using the criminal process as a weapon to suppress the exercise of a constitutional right; (c) setting the criminal diversion period at twelve months rather than the standard six months, without legitimate penological justification, for the purpose of exhausting the civil statute of limitations; (d) filing a pleading in the criminal case opposing early termination of diversion and threatening resentencing when Janna Turpel sought to be discharged after completing the program; (e) overcharging Janna Turpel with severe criminal charges in order to protect against a civil lawsuit; and (f) maintaining a simultaneous financial interest in the suppression of Janna Turpel's civil claims by virtue of his civil defense representation of Medina City and other municipalities within Medina County.

132. These acts constitute vindictive prosecution, in violation of 42 U.S.C. § 1983.

133. Defendant Lanier is not entitled to absolute prosecutorial immunity for the conduct described herein. Lanier's decisions were deliberately based upon an unjustifiable standard, that being Janna Turpel's potential exercise of her First Amendment rights. Moreover, absolute immunity protects only conduct intimately associated with the judicial phase of the criminal process.

32

134. Conditioning a plea on the waiver of a civil lawsuit under these circumstances, setting a diversion period to exhaust a limitations period, filing pleadings to threaten resentencing in order to suppress civil litigation, and acting throughout to protect Chatham Township are not prosecutorial functions—they are administrative and personal acts for which only qualified immunity (at most) applies. Defendant Lanier cannot satisfy qualified immunity because the rights at issue were clearly established, and a reasonable prosecutor would have known that this conduct violates those rights.

135. As a direct and proximate result of Defendant Lanier's unconstitutional conduct, Janna Turpel has suffered the deprivation of her constitutional rights.

136. Plaintiffs demand compensatory damages, punitive damages against Defendant Lanier in his individual capacity, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

137. Plaintiffs further seek injunctive relief in the form of an injunction prohibiting Defendants from seeking further extension of Janna Turpel's involvement in the diversion program, or seeking to revoke the plea agreement in light of the filing of this lawsuit, both of which these Defendants have affirmatively threatened to do.

138. Defendant Lanier's actions in this matter have been taken, in whole or in part, in his capacity as assistant law director for the City of Medina, because the actions described herein have been taken to deter Janna Turpel's exercise of her constitutional rights. Lanier has a stake in deterring the exercise of Janna Turpel's constitutional rights.

139. Lanier acted as a final municipal policymaker. In that capacity, Lanier established a policy, in response to the circumstances of this case, of over-charging a potential civil plaintiff criminally, and utilizing those charges as leverage against that civil case, where the potential civil

33

defendant is a local municipality.  As such, the City and/or the County and/or the Township are liable for these constitutional deprivations.

**EIGHTH CAUSE OF ACTION**
*Civil Rights — Selective Prosecution (42 U.S.C. § 1983 — On Behalf of Janna Turpel — Defendants Lanier, City of Medina, County of Medina, and Chatham Township)*

140.    All preceding allegations are incorporated herein by reference.

141.    At all relevant times, Defendant Lanier acted under color of state law in his capacity as a Medina Municipal Court Prosecutor.

142.    Lanier and/or the City and/or the County and/or the Township acted to deter Janna Turpel from exercising her protected right to seek redress in the courts and violated her right to due process.

143.    Lanier singled out Janna Turpel due to her potential and threatened exercise of her First Amendment rights. On information and belief, Lanier has not prosecuted similarly situated individuals whose alleged traffic infractions do not involve a potential civil lawsuit against a local municipality.

144.    Lanier initiated the prosecution with a discriminatory purpose, that is, to take action against Janna Turpel because of her potential and threatened civil lawsuit.

145.    Lanier's selective prosecution has a discriminatory effect on all members of the public who may seek to exercise their right to take legal action against a local municipality.

146.    These acts constitute selective prosecution, in violation of 42 U.S.C. § 1983.

147.    Defendant Lanier is not entitled to absolute prosecutorial immunity for the conduct described herein.  Lanier's decisions were deliberately based upon an unjustifiable standard, that being Janna Turpel's potential exercise of her First Amendment rights.  Moreover, absolute

34

immunity protects only conduct intimately associated with the judicial phase of the criminal process.

148.     As a direct and proximate result of Defendant Lanier's unconstitutional conduct, Janna Turpel has suffered the deprivation of her constitutional rights.

149.     Plaintiffs demand compensatory damages, punitive damages against Defendant Lanier in his individual capacity, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

150.     Plaintiffs further seek injunctive relief in the form of an injunction prohibiting Defendants from seeking further extension of Janna Turpel's involvement in the diversion program, or seeking to revoke the plea agreement in light of the filing of this lawsuit, both of which Defendants have affirmatively threatened to do.

151.     Defendant Lanier's actions in this matter have been taken, in whole or in part, in his capacity as assistant law director for the City of Medina, because the actions described herein have been taken to deter Janna Turpel's exercise of her constitutional rights against a nearby municipality within the same County framework.  Lanier has a stake in deterring the exercise of Janna Turpel's constitutional rights.

152.     Lanier acted as a final municipal policymaker.  In that capacity, Lanier established a policy, in response to the circumstances of this case, of over-charging a potential civil plaintiff criminally, and utilizing those charges as leverage against that civil case, where the potential civil defendant is a local municipality.   As such, the City and/or the County and/or the Township are liable for these constitutional deprivations.

**NINTH CAUSE OF ACTION**

*Civil Rights — Equal Protection Violation (42 U.S.C. § 1983 — On Behalf of Janna Turpel — Defendants Lanier, City of Medina, County of Medina, and Chatham Township)*

153.     All preceding allegations are incorporated herein by reference.

35

154.    At all relevant times, Defendant Lanier acted under color of state law in his capacity as a Medina Municipal Court Prosecutor.

155.    Lanier and/or the City and/or the County and/or the Township violated Janna Turpel's equal protection rights.

156.    Defendants chose to exercise the power of the State in the manner they did solely due to Janna Turpel's potential exercise of her constitutional rights.

157.    Arbitrary state action against an individual due to her exercise or potential exercise of protected constitutional rights violates that individual's right to equal protection of the law.

158.    Defendant Lanier is not entitled to absolute prosecutorial immunity for the conduct described herein.  Lanier's decisions were deliberately based upon an unjustifiable standard, that being Janna Turpel's potential exercise of her First Amendment rights.  Moreover, absolute immunity protects only conduct intimately associated with the judicial phase of the criminal process.

159.    As a direct and proximate result of Defendant Lanier's unconstitutional conduct, Janna Turpel has suffered the deprivation of her constitutional rights.

160.    Plaintiffs demand compensatory damages, punitive damages against Defendant Lanier in his individual capacity, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

161.    Plaintiffs further seek injunctive relief in the form of an injunction prohibiting Defendants from seeking further extension of Janna Turpel's involvement in the diversion program, or seeking to revoke the plea agreement in light of the filing of this lawsuit, both of which Defendants have affirmatively threatened to do.

162.    Defendant Lanier's actions in this matter have been taken, in whole or in part, in his capacity as assistant law director for the City of Medina, because the actions described herein

36

have been taken to deter Janna Turpel's exercise of her constitutional rights against a nearby municipality within the same County framework. Lanier has a stake in deterring the exercise of Janna Turpel's constitutional rights.

163. Lanier acted as a final municipal policymaker. In that capacity, Lanier established a policy, in response to the circumstances of this case, of over-charging a potential civil plaintiff criminally, and utilizing those charges as leverage against that civil case, where the potential civil defendant is a local municipality. As such, the City and/or the County and/or the Township are liable for these constitutional deprivations.

**TENTH CAUSE OF ACTION**
*State Law Abuse of Process — On Behalf of Janna Turpel — Defendant Lanier*

164. All preceding allegations are incorporated herein by reference.

165. In the alternative, Lanier and/or the City and/or the County and/or the Township set in motion a proper criminal proceeding against Janna Turpel in proper form and with probable cause.

166. These Defendants then perverted the criminal proceeding to accomplish an ulterior purpose. Rather than legitimately seeking to prosecute Turpel for alleged crimes, these Defendants used the criminal proceedings to exert pressure on Turpel not to file a civil claim.

167. Turpel has been directly damaged by that abuse of process by virtue of being exposed to grossly inappropriate criminal sanctions, having her diversion extended, and feeling threatened with regard to the potential assertion of a civil claim.

168. Plaintiffs demand compensatory damages and punitive damages against Defendant Lanier.

## ELEVENTH CAUSE OF ACTION

*Civil Rights — Conspiracy Under 42 U.S.C. § 1985 (On Behalf of Janna Turpel — All Constitutional Defendants)*

169.    All preceding allegations are incorporated herein by reference.

170.    Upon information and belief, Defendants Clinage, Denton, Turner, Lanier, Medina County, the City of Medina, and Chatham Township conspired with one another for the purpose of depriving Janna Turpel of the equal protection of the laws and of equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985.

171.    Specifically, upon information and belief, these Defendants coordinated to: (a) conduct a one-sided investigation that protected the Township's driver while generating a factual record supporting criminal prosecution of Janna Turpel; (b) suppress evidence of Aungst's admissions regarding the plow hitch; (c) refer the matter for criminal prosecution under circumstances calculated to deter civil litigation; and (d) use the prosecution as leverage to prevent Janna Turpel from filing a civil lawsuit against Chatham Township.

172.    Acts taken in furtherance of this conspiracy include: the one-sided investigation by Clinage, Denton, and Turner; the off-camera conversations about the plow hitch; the referral to Lanier; Lanier's authorization of charges; the plea condition; the diversion extension; and the opposition to early termination.

173.    As a direct and proximate result of this conspiracy, Janna Turpel was deprived of her constitutional rights and suffered the damages described herein.

174.    Plaintiffs demand compensatory damages, punitive damages against individual Defendants, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, jointly and severally as applicable, as follows:

38

(a) Compensatory damages in an amount to be determined by the jury, exceeding $75,000.00, exclusive of costs and interest, for wrongful death damages including loss of support, loss of services, and loss of society—encompassing loss of companionship, consortium, care, love, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education—suffered by all statutory beneficiaries;

(b) Compensatory damages on the survivorship claim for V.T.'s pre-death pain, suffering, terror, and anguish, and for destruction of personal property;

(c) Punitive damages as described herein;

(d) Compensatory damages, punitive damages, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 on the civil rights claims of Janna Turpel against the Constitutional Defendants;

(e) Injunctive relief as described herein;

(f) Pre-judgment and post-judgment interest as permitted by law;

(g) Costs of suit; and

(h) Such other and further relief as this Court deems just and equitable under the circumstances.

Respectfully submitted,

/s/ Jonathan N. Bond
**Jonathan N. Bond (0096696)**
**Michael Jay Leizerman (0063945)**
*The Law Firm for Truck Safety, LLP*
3232 Executive Parkway, Suite 106
Toledo, OH 43606
(800) 628-4500
jon@truckaccidents.com
michael@truckaccidents.com

*Attorneys for Plaintiffs*

**John C. Camillus (0077435)**
*Law Offices of John C. Camillus, LLC*
P.O. Box 141410
Columbus, OH 43215
(614) 992-1000
jcamillus@camilluslaw.com

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

/s/ Jonathan N. Bond
**Jonathan N. Bond**
*Attorney for Plaintiffs Martin J. Turpel,*
*Individually and as Administrator of the*
*Estate of V.T., deceased and Janna Turpel*